## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

Dallas Mudd,
                         Plaintiff,
       v.

National Labor Relations Board,
Lauren McFerran, in her official
capacity as the Chairman of the
National Labor Relations Board, and
Marvin Kaplan, Gwynne Wilcox, and
David Prouty, in their official capacities
as Board Members of the National
Labor Relations Board,
                         Defendants.

Civil Action No.  4:24-cv-01055-O

## DALLAS MUDD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR A PRELIMINARY INJUNCTION AND TO CONSOLIDATE A HEARING ON THE PRELIMINARY INJUNCTION WITH A TRIAL ON THE MERITS

Aaron Solem (admitted *pro hac vice*)
c/o National Right to Work Legal
Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, VA  22160
(703) 321-8510 (phone)
(703) 321-9319 (fax)
abs@nrtw.org

Matthew D. Hill, Of Counsel
State Bar No. 24032296
Pryor & Bruce
302 N. San Jacinto
Rockwall, TX 75087
(972) 771-3933 (phone)
(972) 771-8343 (fax)
mhill@pryorandbruce.com

*Attorneys for Plaintiff Dallas Mudd*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 4

   I.   The Board exercises substantial executive power. ............................... 4

  II.  Factual Background ................................................................................ 7

ARGUMENT ......................................................................................................... 8

   I.   Mudd is likely to succeed on the merits of his constitutional
      claims. ................................................................................................. 8

      A.   There are only two exceptions to the President's removal
           power. ........................................................................................ 8

      B.   The NLRB does not qualify for the *Humphrey's
           Executor* exception. .............................................................. 10

      C.   *Collins v. Yellen* does not apply. ........................................... 16

  II.  Mudd will suffer irreparable harm because he is
      forced to participate in an unconstitutional administrative
      process to vindicate his statutory rights. ........................................... 19

 III.  The balance of equities and public interest favor
      granting a preliminary injunction. ..................................................... 21

 IV.  The Court may also proceed directly to the merits and award
      final judgment. .................................................................................... 22

CONCLUSION.................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*ABM Industry Groups, LLC v. DOL,*
  No. 4:24-cv-03353, 2024 WL 4642962 (S.D. Tex. Oct. 30, 2024) ............................ 19

*Alpine Sec. Corp. v. FINRA,*
  No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ................................... 20, 21

*Aunt Bertha v. NLRB,*
  No. 24-cv-798, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024) ............................ 2, 18

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023)................................................................. 2, 19

*BST Holdings, LLC v. OSHA,*
  17 F.4th 604 (5th Cir. 2021)............................................................. 21

*Burgess v. FDIC,*
  639 F. Supp.3d 732 (N.D. Tex. 2022)...................................................... 19

*Cemex Construction Materials Pacific, LLC,*
  372 NLRB No. 130 (Aug. 25, 2023)........................................................ 6

*City of Arlington v. FCC,*
  569 U.S. 290 (2013)..................................................................... 12

*Cochran v. SEC,*
  20 F.4th 194 (5th Cir. 2021)....................................................... 17, 18, 19

*Collins v. Yellen,*
  594 U.S. 220 (2021)............................................................10, 12, 15, 17

*Consumers' Research v. CPSC,*
  592 F. Supp. 3d 568 (E.D. Tex. 2022) ................................................... 19

*Consumers' Research v. CPSC,*
  91 F.4th 342 (5th Cir. 2024)......................................................... 4, 13, 14

*Consumers' Research v. CPSC,*
  98 F.4th 646 (5th Cir. 2024)............................................................. 14

*Curtis 1000, Inc. v. Suess,*
  24 F.3d 941 (7th Cir. 1994) ............................................................. 22

*Daniels Health Scis., LLC v. Vascular Health Scis., LLC,*
  710 F.3d 579 (5th Cir. 2013) ............................................................ 21

*Eli Lilly & Co. v. Generix Drug Sales, Inc.,*
  460 F.2d 1096 (5th Cir. 1972) ....................................................... 4, 22

*Elrod v. Burns,*
  427 U.S. 347 (1976)..................................................................... 19

## TABLE OF AUTHORITIES (CONT'D)

*Emporium Capwell Co. v. W. Addition Cmty. Org.*,
   420 U.S. 50 (1975) .................................................................................................. 12

*Energy Transfer, LP v. NLRB*,
   No. 24-cv-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024) .................................. 18

*Free Enterprise Fund v. PCAOB*,
   561 U.S. 477 (2010) ........................................................................................... passim

*Humphrey's Executor v. United States*,
   295 U.S. 602 (1935) ............................................................................... 10, 11, 14, 15

*Leedom v. Kyne*,
   358 U.S. 184 (1958) ............................................................................................. 3, 6

*McLaren Macomb*,
   372 NLRB No. 58 (Feb. 21, 2023) ........................................................................... 5

*Morrison v. Olson*,
   487 U.S. 654 (1988) ................................................................................................. 9

*Myers v. United States*,
   272 U.S. 52 (1926) ................................................................................................. 15

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................................ 8, 21

*Overstreet v. El Paso Disposal, L.P.*,
   625 F.3d 844 (5th Cir. 2010) ................................................................................. 13

*Seila Law LLC v. CFPB*,
   591 U.S. 197 (2020) ........................................................................................... passim

*Select Milk Producers, Inc. v. Johanns*,
   400 F.3d 939 (D.C. Cir. 2005) ............................................................................... 21

*SpaceX v. NLRB*,
   No. 6:24-cv-203, 2024 WL 3512082 (W.D. Tex. July 23, 2024)...................... passim

*Steele v. Louisville & Nashville R.R.*,
   323 U.S. 192 (1944) ........................................................................................... 6, 12

*Thryv, Inc.*,
   372 NLRB No. 22 (Dec. 13, 2022) ...................................................................... 5, 11

*Univ. of Texas v. Camenisch*,
   451 U.S. 390, 395 (1981).......................................................................................... 22

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)................................................................................................. 2, 8

## TABLE OF AUTHORITIES (CONT'D)

**Statutes**

15 U.S.C. § 41 ........................................................................................... 15

29 U.S.C. § 153(a) ............................................................................ 1, 4, 15

29 U.S.C. § 153(d) ..................................................................................... 4

29 U.S.C. § 154 .......................................................................................... 5

29 U.S.C. § 156 .................................................................................... 6, 11

29 U.S.C. § 159 .......................................................................................... 6

29 U.S.C. § 160(a) ..................................................................................... 5

29 U.S.C. § 160(j) ................................................................................ 7, 12

29 U.S.C. § 161 .......................................................................................... 7

**Other Authorities**

1 Annals of Cong. 463 (1789) .................................................................... 9

11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE
    AND PROCEDURE § 2947 (2d ed. 1992) ................................................ 21

**Rules**

Fed. R. Civ. P. 65(a)(2) ....................................................................... 4, 22

**Regulations**

Representation—Case Procedures: Election Bars; Proof of Majority
    Support in Construction-Industry Collective-Bargaining Relationships,
    85 Fed. Reg. 18366 (Apr. 1 2020) ....................................................... 6

Representation-Case Procedures: Election Bars; Proof of Majority
    Support in Construction Industry Collective-Bargaining Relationships,
    89 Fed. Reg. 62952  (Aug. 1, 2024) ..................................................... 6

Standards for Determining Joint Employer Status,
    88 Fed. Reg. 73946 (Oct. 27, 2023) ..................................................... 6

# INTRODUCTION

Dallas Mudd is an employee of Aunt Bertha (doing business as FindHelp), who seeks to rid his workplace of an unwanted union, the Office & Professional Employees International Union (OPEIU). The National Labor Relations Act (NLRA) gives Mudd a right to file a decertification petition with the National Labor Relations Board (NLRB or Board) for it to conduct a secret ballot election at his workplace. Mudd filed such a petition with NLRB Region 16. Region 16 dismissed his decertification petition because the Region and OPEIU are pursuing unfair labor practice claims against FindHelp. Region 16 told Mudd he can seek reinstatement of his decertification petition after the conclusion of its unfair labor practice cases against FindHelp. Mudd disagrees with Region 16's decision and will file an appeal to the five member Board on or before November 6, 2024.

Mudd is being compelled to appear before an unconstitutionally structured Board to vindicate his statutory rights. The Board's structure violates Article II of the Constitution because its members are not politically accountable to the President. Under the NLRA Section 3(a), Board Members may be removed by the President only for "neglect of duty or malfeasance in office" and for no other reason. 29 U.S.C. § 153(a). This removal restriction unlawfully interferes with the President's authority to take "[c]are that the Laws be faithfully executed." U.S. Const. art. II, § 3.

1. Mudd seeks a preliminary injunction to temporarily halt the Board from deciding his appeal. This injunction would halt the ongoing and irreparable harm he is suffering by being required to enforce his statutory rights before an

unconstitutionally structured agency. As discussed below, Mudd can establish that he will "likely . . . succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In fact, his employer has already secured an injunction against some of the same unfair labor practices cases blocking his decertification petition. *Aunt Bertha v. NLRB*, No. 24-cv-798, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024) (enjoining unfair labor practice trial because NLRB ALJs are unlawfully shielded from Presidential control).

*First*, Mudd is likely to succeed on the merits. "[T]he President's removal power is the rule, not the exception." *Seila Law LLC v. CFPB*, 591 U.S. 197, 228 (2020). In *Humphrey's Executor*, the Supreme Court recognized a narrow exception for multimember agencies, balanced along partisan lines, that do not wield "substantial executive power." *Id.* That exception does not apply to Board Members because the NLRB is not required to be balanced along partisan lines and it wields substantial executive power. The removal protections the Act affords to Board Members are inconsistent with the President's authority under Article II.

*Second*, Mudd is suffering irreparable harm because he is being forced to vindicate his statutory rights before an unconstitutionally structured agency. Being forced to appear before such an agency is a "here-and-now" injury. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). Unlike other harms that can be corrected by federal courts after an illegitimate proceeding ends, this harm "has already happened [and] cannot

be undone," *id.*, because Mudd cannot obtain judicial review of the Board's ultimate decision in his case. Employees like Mudd have no right to appeal NLRB decisions in election cases to the federal courts. *See Leedom v. Kyne*, 358 U.S. 184, 190 (1958). Consequently, to preserve his right to declaratory relief, Mudd needs a preliminary injunction *before* the NLRB decides his election case. In other words, Mudd has a constitutional right to have Board Members who serve at the pleasure of the President decide his appeal and determine his statutory rights.

*Finally*, the balance of equities and public policy favor enjoining the NLRB's proceedings. As to the equities, the NLRB will suffer no harm from a pause in the proceedings—the NLRB can decide Mudd's appeal after its constitutional infirmities have been remedied. There is no public interest in allowing an unconstitutional government proceeding to continue. Rather, the public interest supports granting Mudd "relief sufficient to ensure that the [labor law] standards to which [Mudd is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 513 (2010). The Court should enjoin the underlying NLRB proceedings until it awards Mudd declaratory relief, or it should award Mudd declaratory relief after consolidating the trial on the merits with the preliminary injunction hearing it schedules.

2. Mudd also moves the Court to consolidate its hearing on the preliminary injunction motion with a trial on the merits. Federal Rule 65(a)(2) provides that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." Fed.

R. Civ. P. 65(a)(2). This action is appropriate when, as here, there are no issues of material fact, but only issues of law. *See Eli Lilly & Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1107 (5th Cir. 1972) ("If after such a hearing the district judge should conclude that this is a case wherein no material fact issues remain and there is indeed nothing left to be tried, he should not hesitate to afford [] final relief."). The main question for the Court is whether *Humphrey's Executor* and *Consumers' Research v. CPSC*, 91 F.4th 342, 349–50 (5th Cir. 2024) bar Mudd's legal challenge to NLRA Section 3(a) removal protections. These are legal questions, and the Court can skip past preliminary relief and award Mudd a declaration that Section 3(a) violates the Article II now.

## BACKGROUND

### I. The Board exercises substantial executive power.

The NLRB is a federal agency that governs almost all private sector labor relations in America. 29 U.S.C. §§ 151–69. The NLRB consists of no more than five Board Members who are appointed by the President to staggered five-year terms, with the advice and consent of the Senate. *See* 29 U.S.C. § 153(a). Board Members may be removed only by the President "upon notice and hearing" for "neglect of duty or malfeasance in office, but for no other cause." *Id.*

The General Counsel is appointed to a four-year term by the President with the advice and consent of the Senate. *See* 29 U.S.C. § 153(d). The General Counsel operates independently of the Board and is responsible for prosecuting unfair labor practices complaints. *Id.*

4

The Board exercises substantial executive authority through its hiring, policymaking (through both adjudications and rulemaking), and prosecutorial powers. Among other matters, it decides which employers are subject to the NLRA, which employees are protected by the Act, how and with whom employees can seek or end union representation, and whether employees can use their employer's property for such purposes.

The Board has the power to appoint an "executive secretary, and such attorneys, examiners, and regional directors, and such other employees as it may . . . find necessary for the proper performance of its duties." 29 U.S.C. § 154. Through this authority, the Board appoints Regional Directors who oversee the NLRB's twenty-six regional offices. The Board also uses this power to hire and supervise ALJs.

The Board has the executive power to "prevent any person from engaging in any unfair labor practice . . . affecting commerce," which entails authority to conduct administrative adjudications and exact substantial remedies from employers and unions. 29 U.S.C. § 160(a). In the past few years, the Board has conducted adjudications and issued decisions that have vastly altered labor law. *See, e.g., Thryv, Inc.*, 372 NLRB No. 22 (Dec. 13, 2022) (Board can award expansive monetary compensation, legally indistinguishable from compensatory damages); *McLaren Macomb*, 372 NLRB No. 58 (Feb. 21, 2023) (non-disparagement and confidentiality provisions in settlement agreements violate the Act); *Cemex Construction Materials Pacific, LLC*, 372 NLRB No. 130 (Aug. 25, 2023) (employer legally required to

recognize a union or file for a representation election based solely on a union's recognition demand).

The Board's executive power also extends to representation proceedings. 29 U.S.C. § 159. The Board conducts representation elections to determine whether a union represents employees in a workplace. Once the Board has certified a union as the exclusive representative of a bargaining unit, that union has sole power to negotiate the covered employees' wages, hours, and other conditions of employment. NLRB certification grants a union power "comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents." *Steele v. Louisville & Nashville R.R.*, 323 U.S. 192, 202 (1944). The Board's power over representation proceedings is almost plenary because its decisions in representation cases are not directly reviewable in federal court, except in narrow circumstances. *See Leedom*, 358 U.S. at 190.

The Board also has rulemaking power. 29 U.S.C. § 156. While the Board historically exercises its power through adjudications, it also issues substantive regulations. *See, e.g.*, Standards for Determining Joint Employer Status, 88 Fed. Reg. 73946 (Oct. 27, 2023); Representation—Case Procedures: Election Bars; Proof of Majority Support in Construction-Industry Collective-Bargaining Relationships, 85 Fed. Reg. 18366 (Apr. 1 2020); Representation-Case Procedures: Election Bars; Proof of Majority Support in Construction Industry Collective-Bargaining Relationships, 89 Fed. Reg. 62952  (Aug. 1, 2024) (repeal of prior rule).

Finally, the Board possesses prosecutorial power. The Board may authorize the General Counsel to seek preliminary injunctions in federal court, 29 U.S.C. § 160(j), and has the power to issue subpoenas in both election and unfair labor practice cases. 29 U.S.C. § 161.

## II. Factual Background

In April 2023, OPEIU won an election at Aunt Bertha, which does business as FindHelp (FindHelp). (Compl. ¶ 25–26, ECF Doc. 1, p. 5). Dallas Mudd started working as an employee at FindHelp in January 2024. (Compl. ¶ 27, ECF Doc. 1, p. 5). As such, Mudd never had the opportunity to vote on whether he wanted to be represented by the OPEIU. Mudd believes that OPEIU representation is undesirable because, among other reasons, his employer already provides competitive wages and benefits. (Compl. ¶ 28, ECF Doc. 1, p. 6). After observing union actions that he felt undermined the company, Mudd set out to decertify OPEIU. (Compl. ¶ 29–31, ECF Doc. 1, p. 6). After more than 30% of Mudd's coworkers signed a showing of interest in support of decertification, Mudd filed a decertification petition with the NLRB and it is docketed as *Aunt Bertha, a Public Benefit Corporation d/b/a FindHelp*, Case No. 16-RD-351569 (Sept. 27, 2024). (Compl. ¶ 32–33, ECF Doc. 1, p. 6–7).

On October 2, 2024, NLRB Region 16's Director Timothy Watson (Region 16) issued a show cause order asking the parties to submit their positions on whether Mudd's petition should be dismissed, subject to reinstatement, because the Region and OPEIU are pursuing unfair labor practice allegations against FindHelp in Case Nos. 16-CA-319893, 16-CA-329129, 16-CA- 311267, 16-CA-312143, 16-CA-313516,

16-CA-318102, and 16-CA-318170. (Compl. ¶ 36, ECF Doc. 1, p. 7); (Ex. A, B). On October 9, 2024, Region 16 dismissed Mudd's decertification petition, subject to reinstatement, based on these unfair labor practice allegations. (Compl. ¶ 40, ECF Doc. 1, p. 8); (Ex. A, B).

Mudd will appeal the Region's decision by filing a "Request for Review" to the five-member Board, which is due on or before November 6, 2024. (Compl. ¶ 43, ECF Doc. 1, p. 9) (Declaration of Aaron Solem, ¶¶ 7–8). After he files his Request for Review, Mudd's election case will be before the Board. The problem, however, is the Board Members deciding Mudd's case are not politically unaccountable to the President.

## ARGUMENT

Preliminary injunctive relief is proper when a movant establishes: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor, and (4) granting the injunction is in the public interest. *Winter*, 555 U.S. at 20. The balance of equities and the public interest factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Mudd satisfies all four elements.

## I. Mudd is likely to succeed on the merits of his constitutional claims.

### A. There are only two exceptions to the President's removal power.

Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law*, 591 U.S. at 203 (quoting U.S. Const. art. II, §§ 1, 3). Since it "would be impossible for one man to perform" all the duties of the Executive Branch, the Constitution "assumes" the

President will carry out his obligations through "lesser executive officers." *Id.* at 213 (cleaned up). Because "[t]hese lesser officers must remain accountable to the President, whose authority they wield," the President's executive power necessarily extends to "'appointing, overseeing, and controlling those who execute the laws.'" *Id.* (quoting 1 Annals of Cong. 463 (1789)).

The power to control executive officials "includes the ability to remove" them. *Id.* Otherwise, the President would have no way to ensure that executive officials are taking care the laws are faithfully executed. In that case, the President "could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 204 (citation omitted).

The "general rule" is that the President has "unrestricted removal power" over his subordinates. *Id.* at 215. In the face of that customary rule of presidential power, the Supreme Court has recognized only two narrow exceptions. *First*, in *Humphrey's Executor* the Supreme Court upheld for-cause removal restrictions for principal officers in partisan-balanced multimember agencies "that do not wield substantial executive power." *Seila Law*, 591 U.S. at 218. *Second*, in *Morrison v. Olson*, 487 U.S. 654 (1988), the Court held that Congress could restrict removal of inferior officers who have "limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218. The *Morrison* exception is not at issue here.

*Humphrey's Executor* and *Morrison* "represent . . . the outermost constitutional limits of permissible congressional restrictions on the President's removal power." *Seila Law*, 591 U.S. at 218. The Supreme Court has rejected every attempt to go past

those limits. *See Collins v. Yellen*, 594 U.S. 220, 251 (2021); *Seila Law*, 591 U.S. at 204; *Free Enterprise Fund*, 561 U.S. at 483–84. This is because "the President's removal power is the rule, not the exception" and the Supreme Court has not welcomed "invitation[s]" for new exceptions. *Seila Law*, 591 U.S. at 228.

**B. The NLRB does not qualify for the *Humphrey's Executor* exception.**

*Humphrey's Executor* involved the FTC, a commission of five members appointed by the President with the Senate's advice and consent. *Humphrey's Executor v. United States*, 295 U.S. 602, 619–20 (1935). By statute, no more than three of the commissioners could be members of the same political party. *See id.* Congress created the commission as a "body of experts who shall gain experience by length of service; a body which shall be independent of executive authority, except in its selection, and free to exercise its judgment without the leave or hindrance of any other official or any department of the government." *Id.* at 625–26. Accordingly, the President could remove commissioners only "for inefficiency, neglect of duty, or malfeasance in office." *Id.* at 619 (citation omitted).

The Supreme Court upheld these removal protections. The Supreme Court reasoned that the FTC "is an administrative body created by Congress to carry into effect legislative policies embodied in the statute . . . and to perform other specified duties as a legislative or as a judicial aid." *Id.* at 628. The *Humphrey's Executor* Court "viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power,'" and having only a limited authority to act "as a legislative or as a judicial aid"—by making reports to Congress, or recommendations to courts. *Seila Law*, 591 U.S. at

215. And its holding reached no further than the demarcated "set of powers" that served as the "basis" for the Court's decision. *Id.* at 219 n.4.

1. *Humphrey's Executor* does not apply to the Board because its members exercise substantial executive power through their adjudicative, policymaking, and prosecutorial authority. The NLRB is not a toothless advisory board issuing reports to Congress, like FTC Commissioners in 1935. Rather, the Board enforces the NLRA against private parties in many ways.

*First*, the Board has robust "enforcement authority," which includes the power to order "daunting" monetary relief against private parties, "a quintessentially executive power not considered in *Humphrey's Executor.*" *Seila Law*, 591 U.S. at 219. This monetary relief includes awarding damages "to compensate [unlawfully terminated] employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of" an unlawful termination. *Thryv*, 372 NLRB No. 22, slip op. at 1. This law-enforcement function of fashioning and ordering remedies is an example of executive power. *Seila Law*, 591 U.S. at 219.

*Second*, the Board "possesses the authority to promulgate binding rules fleshing out [a] federal statute[], including a broad prohibition on unfair [labor] practices in a major segment of the U.S. economy," affecting nearly every private sector business and employee. *Seila Law*, 591 U.S. at 218; *see* 29 U.S.C. § 156. While the Board traditionally preferred adjudication to rulemaking, it has increasingly flexed its regulatory muscle. For example, the Board recently promulgated rules on establishing a joint employment relationship and limiting employee rights to

11

elections in the representation process. *See supra*, p. 6. Because "interpreting a law enacted by Congress to implement the legislative mandate is the very essence of execution of the law," an agency "empowered to issue a 'regulation or order' . . . clearly exercises executive power." *Collins*, 594 U.S. at 254 (cleaned up).

*Third*, the Board has the power to conduct adjudications, find facts, and "issue final decisions awarding legal and equitable relief." *See Seila Law*, 591 U.S. at 219. 29 U.S.C. § 160. Like rulemaking, conducting adjudications "are exercises of—indeed, under our constitutional structure they must be exercises of—the executive Power." *Seila Law*, 591 U.S. at 216 n.2 (cleaned up); *see City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013). As part of this power, the Board certifies unions as employees' exclusive bargaining representatives. The NLRB's certification of a union grants it powers "comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents." *Steele*, 323 U.S. at 202; *Emporium Capwell Co. v. W. Addition Cmty. Org.*, 420 U.S. 50, 63 (1975) (recognizing national labor policy "extinguishes the individual employee's power to order his own relations with his employer").

*Finally*, unlike the FTC in 1935, the Board possesses power to seek injunctions in federal court. Section 10(j) of the NLRA gives Board Members (and only Board Members) the "power, upon issuance of [an administrative] complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition [a] United States district court . . . for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j). This "power under § 10(j) is prosecutorial in nature" and

thus a quintessential form of executive power. *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010). The power to seek injunctive relief was not at issue in *Humphrey's Executor* because the FTC did not possess such power until 1938.

In short, the Board wields substantial executive power from top to bottom. Unlike the 1935 FTC in *Humphrey's Executor*, the Board cannot be described as "a mere legislative or judicial aid" that "exercise[s] 'no part of the executive power.'" *Seila Law*, 591 U.S. at 215, 218. The Board is not creating reports for Congress or serving as a chancery to the federal judiciary. Rather, the Board can "issue final regulations, oversee adjudications . . . and determine what penalties to impose on private parties"—all "without meaningful supervision." *Id.* at 225. The Board's powers fall outside the *Humphrey's Executor* exception and thus Board Members must be fully accountable to the President.

Another district court in the Fifth Circuit has recently granted a preliminary injunction against NLRB proceedings on grounds that removal protections for NLRB members violate the separation of powers. *See SpaceX v. NLRB*, No. 6:24-cv-203, 2024 WL 3512082 (W.D. Tex. July 23, 2024). The Court should do the same here.

2. The Board will likely argue that *Consumers' Research v. CPSC*, 91 F.4th 342, 349–50 (5th Cir. 2024) requires a different result. That case considered a challenge to removal restrictions for members of the Consumer Product Safety Commission (CPSC). In *Consumers' Research*, the Fifth Circuit found the *Humphrey's Executor* exception "permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed

legislative and judicial functions and was said not to exercise any executive power." *Id.* at 352. Despite finding the CPSC exercised substantial executive power, the court concluded this fact alone did not "remove[] the Commission from the *Humphrey's* exception." *Id.* at 354. The Fifth Circuit found that *Humphrey's Executor* protected "any traditional independent agency headed by a multimember board." *Id.* at 352 (cleaned up).

*Consumers' Research* is distinguishable or, in the alternative, wrongly decided.[1] The NLRB, unlike the CPSC, has two additional differences that further remove it from the *Humphrey's Executor* exception. Ignoring either of these distinctions would impermissibly expand *Humphrey's Executor*.

*First*, unlike the FTC in 1935, the Board need not be balanced along partisan lines. In *Humphrey's Executor*, the Supreme Court explained that the Federal Trade Commission Act "creates a commission of five members to be appointed by the President by and with the advice and consent of the Senate, and section 1 provides: 'Not more than three of the commissioners shall be members of the same political party.'" *Humphrey's Executor*, 295 U.S. at 619–20. The Supreme Court relied on this provision to justify upholding the removal restrictions: "The commission is to be nonpartisan; and it must, from the very nature of its duties, act with entire

---

[1] If the Court finds *Consumers' Research* indistinguishable, Mudd concedes that would necessitate denying the injunction because there would be no likelihood of success on the merits. In that case, as described more fully below, Mudd would ask the Court grant judgment to the Board to allow Mudd to immediately appeal. *See Consumers' Research v. CPSC*, 98 F.4th 646, 650–57 (5th Cir. 2024) (Oldham, J., dissenting from denial of rehearing en banc).

impartiality." *Id.* at 624. The NLRA does not have a similar requirement of non-partisanship. The President may appoint board members regardless of their party affiliation and could create an entirely partisan Board if he so chooses.

Thus, a sitting President could appoint Board Members from his own party to hamper the next President. This is because Board Members have fixed terms of service that extend beyond the President's four-year term. 29 U.S.C. § 153(a). And these five-year terms are staggered, so the President ordinarily will not have an opportunity to replace all five Board Members within a four-year term. *Id.* Faced with a completely partisan and oppositional Board, it would take a new President at least three years to secure a Board majority. This is why the President must be able to remove Board members "who come from a competing political party who is dead set against [the President's] agenda." *Collins*, 594 U.S. at 256 (cleaned up).

*Second*, Board Members enjoy broader removal protections under Section 3(a) than those insulating the FTC Commissioners in 1935. The latter were removable "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Executor*, 295 U.S. at 620 (quoting 15 U.S.C. § 41). Board Members, by contrast, are removable only "for neglect of duty or malfeasance in office," but not for other causes like inefficiency. 29 U.S.C. § 153(a). Allowing Congress to prohibit the President from removing principal officers for inefficiency would be an unjustified expansion of *Humphrey's Executor. See Collins*, 594 U.S. at 256 ("The President must be able to remove not just officers who disobey his commands but also those he finds 'negligent and inefficient[.]'" (quoting *Myers v. United States*, 272 U.S. 52, 135 (1926)). *See also*

*SpaceX, v. NLRB*, No. 6:24-cv-203, 2024 WL 3512082, slip op. at *4 ("allowing Congress to eliminate the President's ability to remove principal officers for inefficiency would be an unjustified expansion of *Humphrey's Executor*.").

The Supreme Court in *Seila Law* summarized the holding of *Humphrey's Executor* as a narrow exception to the President's removal power, permitting "Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. The Act's removal restrictions do not fall within this exception. The NLRB is not required by statute to be a non-partisan agency. It does not perform legislative and judicial functions as understood in *Humphrey's Executor*, but exercises substantial executive power. Mudd has a likelihood of success on his claim that Board Members' removal protections violate Article II because the NLRB is distinguishable from both the 1935 FTC and the CPSC.

### C. *Collins v. Yellen* does not apply.

The Board will likely argue Mudd must prove that the Board's future decision in his election case would be different absent removal protections. The Board will likely claim that *Collins v. Yellen* supports this proposition. It does not. Mudd is harmed because his rights under the NLRA are being adjudicated by an unconstitutionally structured Board, irrespective of how those Board members eventually decide his case. *Collins* only applies to requests to void an agency's substantive decision—

16

something Mudd does not seek. *Cochran v. SEC*, 20 F.4th 194, 210 n.16. (5th Cir. 2021).

In *Collins*, Fannie Mae and Freddie Mac shareholders challenged actions by the Federal Housing Finance Agency (FHFA) and Department of the Treasury that led to the transfer of "enormous amounts of wealth to [the] Treasury." *Collins*, 594 U.S. at 227, 234–36, 257. The shareholders argued FHFA's structure was unconstitutional due to its director's protection from at-will removal. *Id.* at 235. The shareholders sought to retroactively void the agency's actions, including an order requiring the Treasury to return the payments to Fannie Mae and Freddie Mac. *Id.* at 235–36. Unwinding those past payments would have required the disgorgement of billions of dollars. *Id.*

After oral argument, the FHFA and Treasury agreed to amend the stock purchase agreements eliminating "the variable dividend formula that had caused the shareholders' injury." *Id.* at 244. This mooted any claim for declaratory relief. *Id.* The Supreme Court explained "the only remaining remedial question" in *Collins* "concern[ed] retrospective relief," specifically whether the past payments had to be undone. *Id.* at 257. The Court declined to grant this relief automatically, stating it depended on whether the removal restriction "altered" the government's behavior. *Id.* at 260.

This case does not involve any of the tricky remedial issues seen in *Collins*. Mudd is not seeking to void any Board decision. Unlike the challengers in *Collins*, Mudd only seeks a preliminary injunction to ensure he can receive a forward-looking

declaration. This type of relief was blessed by the Supreme Court in *Free Enterprise Fund,* 561 U.S. at 513 (holding plaintiffs challenging removal restrictions are "entitled to declaratory relief sufficient to ensure that the [administrative] requirements and . . . standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive.").

An en banc Fifth Circuit has already explained, when a removal claim is "meritorious," a plaintiff cannot be "forc[ed] to litigate before an [official] who is unconstitutionally insulated from presidential control." *Cochran*, 20 F.4th at 212–13. *Cochran* also explained that *Collins* is inapplicable when a litigant does not "seek to 'void' the acts of [the unlawfully protected] official" which Mudd is not seeking to do. *Id.* at 210 n.16. Mudd does not seek to void any decision of the Board—he simply seeks a preliminary injunction to protect his ability to obtain declaratory relief so that the decision of the Board in his case comes from a constitutionally structured Board. *See Free Enterprise Fund,* 561 U.S. at 513.

This is why five different district court judges in this circuit have recently found plaintiffs need not show the government altered its behavior when seeking declaratory relief or a temporary halt in an ongoing proceeding. *See SpaceX v. NLRB*, No. 24-cv-203, 2024 WL 3512082, slip op. at *6 (W.D. Tex. July 23, 2024) ("*Collins* at most stands for the proposition that when a properly appointed officer with unconstitutional removal protections acts, appropriate retrospective relief does not include voiding said action."); *Aunt Bertha v. NLRB*, No. 24-cv-798, 2024 WL 4202383, slip op. at *2–3 (N.D. Tex. Sept. 16, 2024); *Energy Transfer, LP v. NLRB*,

No. 24-cv-198, 2024 WL 3571494, slip op. at *4 (S.D. Tex. July 29, 2024); *Consumers'*
*Research v. CPSC*, 592 F. Supp. 3d 568, 586–87 (E.D. Tex. 2022) ("the Fifth Circuit
held in *Cochran v. SEC* that *Collins* does not apply to plaintiffs seeking prospective
relief."), *rev'd on other grounds*, 91 F.4th 342; *ABM Industry Groups, LLC v. DOL*,
No. 4:24-cv-03353, 2024 WL 4642962, slip op. at *5 (S.D. Tex. Oct. 30, 2024) ("What
*Cochran* and *Axon* make clear is that being subject to a proceeding before an
improperly insulated ALJ is a harm separate from any substantive action taken by
the ALJ . . . a plaintiff seeking to halt a proceeding before an unconstitutionally
insulated ALJ need not show that the removal restrictions caused harm other than
the proceeding itself.").[2]

## II. Mudd will suffer irreparable harm because he is forced to participate in an unconstitutional administrative process to vindicate his statutory rights.

Deprivation of a constitutional right "unquestionably constitutes irreparable
injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Supreme Court has recognized
"being subjected to unconstitutional agency authority . . . is a here-and-now injury"
because it is a "proceeding, led by an illegitimate decisionmaker" that "violate[s] the
separation of powers." *Axon*, 598 U.S. at 191.

---

[2] This Court ruled otherwise in *Burgess v. FDIC*, 639 F. Supp.3d 732 (N.D. Tex. 2022).
But the Fifth Circuit's en banc decision in *Cochran* found *Collins* only applies to
claims that seek to "void" agency action. 20 F.4th at 210 n.16. Mudd does not seek to
void any NLRB decision. Nor did the Court consider its decision also conflicts with
*Free Enterprise Fund*, which held a plaintiff challenging an unlawful removal
protection is "entitled to declaratory relief" to ensure they only appear before "a
constitutional agency accountable to the Executive." *Free Enterprise Fund*, 561 U.S.
at 513.

Mudd is suffering an injury because the NLRA violates his constitutional right to appear before politically accountable executive officials. The injury is irreparable because the Court cannot remedy that harm *after* the agency proceedings end. As the Supreme Court recognized in *Axon*, after an unconstitutional proceeding is over, the right to this relief is "effectively lost" because this injury is "impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id.* at 191 (cleaned up); *see Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, slip op. at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (finding irreparable harm absent an injunction because "the resolution of claims by an unconstitutionally structured adjudicator is a 'here-and-now injury' that cannot later be remedied.").

Here the Court could be robbed of its ability to provide Mudd with declaratory relief unless it temporarily enjoins the Board from adjudicating Mudd's appeal or issues a final judgment and declaration before the Board acts. The Board has an incentive to quickly issue a ruling in the underlying administrative proceeding before this Court can issue a judgment—which would allow the Board to argue this case is moot. *See SpaceX*, 2024 WL 3512082, slip op. at *6 (W.D. Tex. July 23, 2024) ("If the Court refused to enjoin that proceeding, then it could potentially finish before this Court could finally adjudicate the merits of SpaceX's claims. This would irreparably injure SpaceX . . . and vitiate the Court's ability to render meaningful merits relief.") (cleaned up); *see also Busler v. NLRB*, Case No. 4:24-cv-00072-O, ECF Doc. 28.[3] And

---

[3] Even if the Board decided Mudd's appeal prior to the conclusion of this case it would not moot Mudd's federal lawsuit because it is capable of repetition yet evading review.

appeals in Board representation cases are typically resolved within four to eight months, too short a time frame to adjudicate this case without an injunction.[4] A preliminary injunction is necessary now "to preserve the court's power to render a meaningful decision." *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 954 (D.C. Cir. 2005) (Henderson, J., dissenting) (quoting 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2947 (2d ed. 1992)).

## III.  The balance of equities and public interest favor granting a preliminary injunction.

The balance of equities and public interest favor granting a preliminary injunction. When the government is defendant, these two factors merge. *Nken*, 556 U.S. at 435. Granting the preliminary injunction is both equitable and serves the public interest because the government suffers no cognizable harm from stopping the perpetuation of unlawful agency action. *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). "The public interest favors preventing the deprivation of individual rights and abuses of government power." *Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, slip op. at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring); *see also Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013) (the "public is served when the law is followed.").

---

Mudd has a right to seek reinstatement of the petition and he will exercise after the conclusion of the Board's case against FindHelp. Compl. ¶ 42, 44. This right to reinstatement makes Mudd's case capable of repetition and the short timeframe of Board representation cases makes difficult to fully litigate this challenge prior to the conclusion of the administrative proceeding.

[4] For example, in *Busler*, also pending before this Court, the Board decided Busler's appeal around 7 months after it was filed. (Solem Declaration ¶ 8).

Mudd has an overriding interest in ensuring his constitutional rights are protected. He is willing to see his own Board appeal slightly delayed to ensure his constitutional rights are protected. The Board has no similar interest—the only government action that is temporarily halted is the Board considering Mudd's own appeal. The Board is not harmed by a temporary pause. As a result, the balance of equities and public interest factors favor issuance of a preliminary injunction.

## IV. The Court may also proceed directly to the merits and award final judgment.

1. Federal Rule of Civil Procedure 65(a)(2) provides that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." Fed. R. Civ. P. 65(a)(2). But if "the eventual outcome on the merits is plain at the preliminary injunction stage, the judge should, after due notice to the parties, merge the stages and enter a final judgment." *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 945 (7th Cir. 1994). To advance to a trial on the merits the Court must give the parties "clear and unambiguous notice" of its intent so the parties can fully present their cases. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Here, final judgment is appropriate because there are likely no disputed material issues of fact, only disputed questions of law. *Eli Lilly & Co.*, 460 F.2d at 1107. As to the facts, there is no question that Mudd is appearing before the Board. Nor is there any dispute about the Board's powers or its removal protections—they are defined by the NLRA—only their legal implications.

22

As to the legal questions, all point towards awarding judgment now, for either Mudd or the Board. The primary legal questions are whether: (1) *Seila Law*'s substantial executive power test controls or if *Consumers' Research*'s maximalist understand of *Humphrey's Executor* bars Mudd's claim; (2) whether *Collins* requires Mudd to show the government altered its behavior to secure a declaration; or (3) whether Mudd is "entitled to declaratory relief sufficient to ensure that the [labor law] standards to which [he is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enterprise Fund*, 561 U.S. at 487. In awarding or denying the injunction, the Court will have already answered the first two questions. And the third question is derivative of whether *Collins* applies.

If the Court finds that *Consumer's Research* (and its understanding of *Humphrey's Executor*) or *Collins* bars Mudd's claim, it can either dismiss the Complaint or award the Board judgment, which would allow Mudd to immediately appeal.[5] Similarly, if the Court finds *Collins* does not apply to declaratory relief and *Consumer's Research* does not apply to the Board, it can award judgment to Mudd. *See SpaceX*, No. 6:24-cv-203, 2024 WL 3512082, slip op. at *4 ("allowing Congress to eliminate the President's ability to remove principal officers for inefficiency would be an unjustified expansion of *Humphrey's Executor*"). Doing so would also save the parties considerable resources from having to brief the same issues more than once and the Court from having to decide duplicative motions.

---

[5] While Mudd believes *Humphrey's Executor* is distinguishable, he also reserves the right to ask the Supreme Court to overrule it, if necessary.

2. As to the relief, Mudd only seeks a declaration that NLRA Section 3(a) is unconstitutional. This is exactly what was sought and awarded by the Supreme Court in *Free Enterprise Fund*. There, an accounting firm sought a declaratory judgment that Congress had "contravened the separation of powers by conferring wide-ranging executive power" on members of the Public Company Accounting Oversight Board (PCAOB) "without subjecting them to Presidential control." *Free Enterprise Fund*, 561 U.S. at 487. The Supreme Court found this "separation-of-powers violation" subjected the firm to a form of unconstitutional governance, inflicting a "'here-and-now' injury that can be remedied by a court" through a declaratory judgment. *Id.* at 513. The accounting firm was "entitled to declaratory relief sufficient to ensure that the reporting requirements and auditing standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Id.*

The Constitution guarantees a right to have laws administered by accountable officials, and depriving persons of that right causes ongoing and irreparable injury. The declaratory judgment ordered in *Free Enterprise Fund* vindicated the accounting firm's right to have the PCAOB's regulations and decisions governing the accounting industry be issued by officials who answer to the President.

Mudd seeks the same relief to address the same harm. Like the accounting firm in *Free Enterprise Fund*, he is harmed by being required to pursue his appeal to officials unaccountable to the President. Just as the firm's right to operate an accounting business was subject to the PCAOB's regulations and decisions governing the accounting industry, Mudd's election petition, seeking vindication of his statutory

24

right to oppose unionization in his workplace, is subject to the Board's decision and regulations. Declaratory relief cures that injury by ensuring his election petition and appeal is considered only by officials who answer to the President. The Court can award that relief after a hearing by declaring NLRA Section 3(a) unconstitutional and making the Board Members who decide Mudd's appeal answerable to the President.

## CONCLUSION

The Court should grant Mudd's preliminary injunction motion or proceed directly to the merits after a hearing and award final judgment by declaring NLRA Section 3(a) unconstitutional.

/s/ Aaron Solem
Aaron Solem (admitted *pro hac vice*)
c/o National Right to Work Legal
Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, VA  22160
(703) 321-8510 (phone)
(703) 321-9319 (fax)
abs@nrtw.org

Matthew D. Hill, Of Counsel
State Bar No. 24032296
Pryor & Bruce
302 N. San Jacinto
Rockwall, TX 75087
(972) 771-3933 (phone)
(972) 771-8343 (fax)
mhill@pryorandbruce.com

*Attorney for Plaintiff Dallas Mudd*

**CERTIFICATE OF CONFERENCE**

I conducted a conference with Dawn Goldstein, Paul Thomas, Kevin Flanagan, David Boehm, and Kent Coupe of the NLRB by email on November 1 and 4, 2024, regarding the relief sought herein. No agreement could be reached because the NLRB opposes the injunction sought and opposes consolidating a hearing on the motion with a trial on the merits.

/s/ Aaron Solem
Aaron Solem

**CERTIFICATE OF SERVICE**

I filed this memorandum with the Court via ECF. Defendants have not filed their notice of appearance but have agreed to service by email. Today, November 4, 2024, I emailed a copy of the memorandum in support of the motion and the motion to NLRB counsel listed below:

Dawn Goldstein
Paul Thomas
Kent Coupe
Kevin Flanagan
David Boehm
NLRB Contempt Compliance & Special Litigation Branch
1015 Half Street SE
Fourth Floor
Washington, DC 20003
Dawn.Goldstein@nlrb.gov
Kent.Coupe@nlrb.gov
Kevin.Flanagan@nlrb.gov
David.Boehm@nlrb.gov

/s/ Aaron Solem
Aaron Solem